UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN A. YOURGA, )
    Plaintiff, )
     )
v. )     Civil Action No. 16-30167-MGM
     )
CITY OF NORTHAMPTON, et al. )
    Defendants. )

MEMORANDUM AND ORDER ON MOTION FOR PROTECTIVE ORDER BY
DEFENDANTS; MOTION FOR PROTECTIVE ORDER LIMITING
DEPOSITIONS BY DEFENDANTS; AND MOTION FOR LEAVE FOR
ADDITIONAL DEPOSITIONS BY PLAINTIFF
(Dkt. Nos. 45, 46 & 51)

ROBERTSON, M.J.

    I.    INTRODUCTION

Plaintiff Johnathan Yourga ("Plaintiff") is a former employee of the Smith Vocational and Agricultural High School ("the School") in Northampton. He was employed in the automotive department. Plaintiff, who left his position in or around late May or early June 2014, alleges a constructive discharge. The defendants are the City of Northampton, the Trustees of the School, Jeffrey Peterson, former Superintendent of the School, and Kevin Brown, former Director of Security of the School. Plaintiff's claims under 42 U.S.C. § 1983 ("§ 1983") against the City and the Trustees were dismissed. Plaintiff's remaining claims are: common law negligence and breach of the covenant of good faith and fair dealing against the City and the Trustees, and violations of civil rights under state and federal law, common law conspiracy, invasion of privacy, intentional infliction of emotional distress, defamation, interference with advantageous relations, malicious prosecution, and abuse of process against Peterson and Brown.

Before the court are three motions: (1) Defendants' Motion for Protective Order Precluding Plaintiff from Obtaining Confidential Personnel Information (Dkt. No. 45); (2)

1

Defendants' Motion for Protective Order Limiting Depositions (Dkt. No. 46); and (3) Plaintiff's Motion for Leave for Additional Depositions (Dkt. No. 51). There is a common theme reflected in the parties' motions. Plaintiff seeks to discover information about employees other than Plaintiff who suffered some form of adverse employment action while Peterson was Superintendent. Defendants object that Plaintiff seeks information that is not relevant to his claims and not proportional to the needs of the case. Defendants further contend that the privacy interests of employees who are not parties to this case outweigh Plaintiff's interests in discovering the reasons for adverse employment actions that employees who are not similarly situated to Plaintiff may have suffered. For the reasons set forth below, the court grants in part and denies in part Defendants' motion for a protective order as to information about employees other than Plaintiff, grants in part and denies in part Plaintiff's motion to exceed the 10-deposition limit in Fed. R. Civ. P. 30(a)(2)(A)(i), and deems as moot Defendants' motion for a protective order limiting depositions in light of the court's ruling on Plaintiff's motion to exceed the 10-deposition limit.

II. ALLEGATIONS IN THE AMENDED COMPLAINT

The following facts are alleged in Plaintiff's amended complaint (Dkt. No. 17). Beginning in 1993, Plaintiff was employed as a full-time instructor in the School's automotive department. His employment was subject to a collective bargaining agreement that ensured him employment for a term of three years and provided that he could not be disciplined, suspended, or terminated without just cause (*id.* at 3). In the spring of 2014, a student at the School complained that Plaintiff was biased against female students in the automotive department (*id.* at 3-4). In April 2014, Plaintiff was placed on paid administrative leave pending an investigation of the student's complaint (*id.* at 4). During an ensuing investigation conducted primarily by

2

Brown, Brown involved the local police department by reporting that Plaintiff had stolen two cars from the School (*id.* at 6). Police officers executed a search warrant at Plaintiff's home on May 21, 2014. At the instigation of Peterson and Brown, Plaintiff was charged with two counts of larceny for the alleged theft from the School of two motor vehicles (*id.* at 7). In late May 2014, Plaintiff was suspended without pay and a grievance hearing was scheduled for June 3, 2014. Fearing that his retirement benefits were at risk because of statements by Peterson, Plaintiff resigned his employment on June 2, 2014. Plaintiff was tried and acquitted on the criminal charges (*id.* at 8). He claims that he could not work for an employer who brought unfounded criminal charges against him and that the termination of his employment constituted a constructive discharge (*id*. at 9).

III. DISCUSSION

A. Defendants' Motion for a Protective Order Shielding Confidential Personnel Information

Defendants seek a protective order precluding Plaintiff from discovering information concerning disciplinary actions, suspensions, or discharges of teachers while Jeffrey Peterson was Superintendent (Dkt. No. 45 at 3-4). Plaintiff initially sought this information by a document production request to which Defendants objected on the grounds, among others, that the request sought information that was not relevant or proportional to the needs of the case, and that it sought confidential personal information about employees other than Plaintiff whose privacy interest in the requested information outweighed Plaintiff's need for the information.[1] Through counsel, Plaintiff represented at oral argument that, in deference to Defendants' confidentiality objection, he had not moved to compel a response from Defendants to his

---

[1] Plaintiff's Document Request 1 sought production of "[a]ll documents concerning suspensions or terminations of teachers while Jeffrey Peterson was Superintendent" (Dkt. No 45 at 3 n.2).

document request number 1.  For this reason, so much of Defendants' motion for a protective order as is directed to Plaintiff's document request number 1 is granted.

Instead of pressing for the production of personnel records, Plaintiff has pursued information about suspensions and discharges of employees other than Plaintiff by questions posed at depositions of current or former School employees possessing responsive information by virtue of their current or former positions at the School.  Through counsel, Plaintiff represented to the court that this was intended to be a less intrusive method of gaining information he believed to be relevant to his case.  Plaintiff suspended the depositions of Leslie Skantz-Hodgson and of two other individuals pending this court's decision on whether he was entitled to ask each deponent questions about adverse employment actions that were taken against School employees other than Plaintiff while Peterson was superintendent.

The protection sought by Defendants as to confidential personnel information is governed by Fed. R. Civ. P. 26(b)(2)(C), which provides, in pertinent part, that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowable under these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . that the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  The same rule limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(c) provides, in part, that a party may seek a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters or by requiring certain confidential information not be revealed or be revealed only in a specified way. Fed. R. Civ. P. 26(c). These rules have been applied to bar certain questions from being asked during a deposition. *See, e.g., A.W. v. I.B. Corp.*, 224 F.R.D. 20, 22-26 (D. Me. 2004).

"When a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (quoting *Sanchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)). Defendants argue that disciplinary actions taken against employees other than Plaintiff are not relevant because Plaintiff cannot rely on so-called "comparator evidence" to show that other employees also suffered an adverse employment action based on a protected characteristic such as race, ethnicity, religion, national origin, or gender. Because Plaintiff has not alleged any such consistent and illegal animus as a motivating factor in adverse employment actions taken on Peterson's watch, Defendants contend that Plaintiff's questions cannot lead to the discovery of relevant or admissible evidence about Peterson's motives for initiating and pursuing the investigation into Plaintiff's conduct. Moreover, even if evidence related to other employees has some marginal relevance to Plaintiff's case, the privacy interests of those employees in the confidentiality of their sensitive personnel information outweighs any interest Plaintiff has in such evidence. For his part, Plaintiff asserts that information about employees other than Plaintiff is discoverable because he "seeks to show that Superintendent Peterson engaged in a pattern of *consistent pattern-like acts* that were

intended to bring about the termination or resignation of employees" and that the discovery will show that his motives were "to find dollars for his football team and he wanted to eliminate any dissent." These motives, while not illegal, could not constitute just cause for the discipline or discharge of an employee protected by a collective bargaining agreement (Dkt. No. 49 at 7 & n.9). The court must consider whether the information about other employees that Defendants "seek[] to protect 'warrant[s] conferral of any special consideration' and 'the type and kind of protection the law affords.'" *Theidon v. Harvard Univ.*, 314 F.R.D. 333, 335 (D. Mass. 2016) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998)). This analysis "balances [Plaintiff's] need for the information at issue against [Defendants'] 'interest in confidentiality and the potential injury to the free flow of information that disclosure portends.'" *Id.* (quoting *Cusumano*, 162 F.3d at 716).

Plaintiff concedes that Defendants raise a legitimate point about the privacy concerns of other employees (Dkt. No. 49 at 2). Indeed, the information Plaintiff is seeking to elicit from deponents about the reasons or justifications for discipline, suspension or discharge is among the most private information about an employee that is likely to be in an employer's possession. *See Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127-28 (D. Mass. 1995). This legitimate privacy interest must be balanced against Plaintiff's need for information so long as that information meets the definition of relevance at the discovery stage. *See Theidon*, 314 F.R.D. at 335 (citing *Krolikowski v. Univ. of Mass.*, 150 F. Supp. 246, 249 (D. Mass. 2001)). While the question is close, the court concludes that Plaintiff has shown that such information is relevant and may lead to the discovery of admissible evidence. The presiding District Judge declined to dismiss Plaintiff's claims against the named individual defendants – Peterson and Brown – because Plaintiff had alleged sufficient facts from which the court could infer that these defendants had

"intentionally worked together for the purpose of harming Plaintiff, including by making misleading statements to the [Northampton Police Department] and by leveraging those misleading statements to coerce Plaintiff to resign rather that grieve his suspension" (Dkt. No. 34 at 6). While it is true that Plaintiff is not seeking true "comparator" evidence, the reasons the presiding District Judge gave for denying Defendants' motion to dismiss a majority of Plaintiff's claims supports a finding that evidence that bears on the motives of the named individual defendants with respect to employees other than Plaintiff may be relevant as proof of their motives in his case. The privacy interests Defendants are invoking must be weighed against the Plaintiff's need for information that will help him prove that Peterson and Brown did not act """in good faith, without malice, and without corruption""" (*id.* at 7 (quoting *South Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.*, 777 N.E.2d 812, 820 (Mass. 2002) (quoting *Gildea v. Ellershaw*, 298 N.E.2d 847, 859 (Mass. 1973))). Their treatment of other employees may (or may not) be relevant and admissible on this point. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S.Ct. 1140, 1143 (2008) (in discrimination case, evidence about an employer's treatment of other employees "is neither *per se* admissible nor *per se* inadmissible"). Courts generally have permitted a plaintiff some discovery about adverse employment actions taken against other employees by a supervisor who is alleged to have acted improperly vis-à-vis the plaintiff. *See, e.g., Brandt v. Fitzpatrick*, No. 1:15-cv-00461-NT, 2017 WL 3841652, at *3 (D. Me. Sept. 1, 2017) (courts have limited discovery of "me too" evidence to the same unit or division and decisionmakers who allegedly discriminated against the plaintiff; citing cases). In seeking limited information about other employees who were allegedly subjected to adverse employment actions in which Peterson had a role, Plaintiff is seeking information about employees who can be characterized as similarly situated to himself at least in the respect that

7

the same decisionmaker had some involvement in the adverse employment action about which Plaintiff seeks information (Dkt. No. 49 at 8-11).

Defendants have argued with some force that the information Plaintiff seeks about Peterson's actions has more of a flavor of inadmissible character evidence than it does of admissible evidence of motive and intent, *see* Fed. R. Evid. 404(a), and it may well be that evidence about employees other than Plaintiff will be excluded at trial. *See Fecho v. Eli Lilly and Co.*, 914 F. Supp. 2d 130, 137-38 (D. Mass. 2012) (discussing distinction between admissible habit evidence and inadmissible character evidence); *cf Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (affirming exclusion of evidence where its admission would have turned the trial into a series of mini-trials about other misconduct complaints against the defendant police officer). Admissibility is, however, "a narrower inquiry than [is] discoverability." *Brandt*, 2017 WL 3841652, at *4. The court is not prepared at this stage of the proceedings to issue a protective order precluding Plaintiff from making comparatively limited inquiries directed to the three deponents whose depositions have been suspended about adverse employment actions taken against other employees while Peterson was superintendent.

B. <u>Plaintiff's Motion for Leave to Take Additional Depositions</u>.

Rule 30(a)(2)(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken under this rule . . . by the plaintiff[], or by the defendants, or by the third-party defendants [or] . . . the deponent has already been deposed in the case." The purpose of the rule limiting the number of depositions is described in the Advisory Committee's notes as follows:

> [The rule] provides a limit on the number of depositions the parties may take, absent leave of court or stipulation with the other parties. One aim of this revision is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties. A second objective is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case. Leave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2).

Fed. R. Civ. P. Advisory Committee's note to 1993 Amendments. Another session of this court has explained that "the purpose of the limitation in the rule is to force counsel to think long and hard about who they want to depose and to depose only those who are really important, so as to stay within the limit set by the rule. . . . courts should not freely grant relief from the limits without a showing of need." *S. F. Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010). The party seeking to exceed the 10-deposition limit or re-depose an individual who has previously been deposed bears the burden of showing a need for the discovery. *See, e.g., S. F. Health Plan*, 264 F.R.D. at 21. A court must limit the frequency of discovery when the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other more convenient, less burdensome or less expensive source or when the proposed discovery is otherwise outside the scope permitted by Rule 26(b)(2).

A brief history of the genesis of the parties' deposition dispute is as follows. On November 16, 2017, Defendants filed Defendants' Motion for a Protective Order Limiting Depositions (Dkt. No. 46). The motion was prompted by defense counsel's observation that Plaintiff had already taken seven depositions, had scheduled five more depositions, and had not taken the depositions of any of the named parties (*id.* at 5). Defense counsel further expressed concern that two of the depositions noticed by Plaintiff's counsel were of individuals who were expected to testify about the circumstances of their discharges from the School, their dislike of Peterson, and other issues that did not appear relevant to Plaintiff's claims (*id.* at 6). Plaintiff

9

responded by filing his Verified Emergency Motion for Leave to Take Additional Depositions (Dkt. No. 51) in which he listed the ten depositions he had already taken and *eighteen* additional depositions he sought leave to take (*id.* at 3-5).[2] At the hearing on the motion, despite expressing concern that Plaintiff had proceeded with what Defendants perceived as an effort to circumvent the cap on depositions by exhausting the maximum allotted number without taking depositions that Plaintiff could easily show were essential, *see AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV, 2010 WL 4116555, at *16 (S.D. Fla. Oct. 18, 2010) (noting risk that a party will exhaust the 10-deposition limit taking depositions that cannot be justified under Fed. R. Civ. P. 26(b), then request leave to take additional justifiable depositions), Defendants agreed at the hearing that Plaintiff should be permitted to take the depositions of John Cotton, Michael Cahillane, Detective Moody, Jeffrey Peterson, Maryann Kuroczko, Tracy Lyon, and John Kelly. According to Plaintiff's list in his motion for leave to take additional depositions, the depositions that remain in dispute are those of Walter Kolodjzinski; Andrew Linkenhoker; John Bobala; Robert Holhut; Mike Furman; Don Baker; Peter Perrson; Theodore Hanks; Kevin Salmon; and a second Rule 30(b)(6) deposition of the School and the Trustees to obtain information about the "budget and funding for a football team; knowledge of money from program cutbacks that was used for football; and knowledge of payroll input into data base for Walter Kolodjzinzki" (Dkt. No. 51 at 4-5).

---

[2] Because Defendants' motion and Plaintiff's motion address precisely the same issue, that being the number of depositions Plaintiff should be permitted to take without a stipulation by the parties, and Plaintiff bears the burden of showing need with respect to the depositions he seeks to take beyond the 10-deposition limit, the court will rule on Plaintiff's motion and deem Defendants' motion moot. In view of Plaintiff's obvious intention to exceed the 10-deposition limit, Defendants' motion was fully justified in the circumstances. Plaintiff's criticism of the motion and his request for sanctions are without any merit. Plaintiff's request for sanctions is denied.

The court applies the principles of Fed. R. Civ. P 26(b) to these requests as follows. *See, e.g., AIG Centennial Ins. Co.*, 2010 WL 4116555, at *17. In reaching the determinations below, the court notes that this case involved the loss of employment of a single individual who is currently employed. While the loss of Plaintiff's employment with the School and his criminal prosecution was undoubtedly traumatic for Plaintiff, the scope of this case and the amount in controversy are relatively modest in comparison to many other cases brought in federal court. Twenty-eight depositions, which is the number of non-expert depositions Plaintiff proposes to take, appears facially inordinate in the case of an employment and civil rights dispute concerning a single individual. While the definition of relevance for discovery purposes is broader than its definition for purposes of admissibility, Defendants' contention that evidence about the employment situations of employees other than Plaintiff is of questionable admissibility has force, particularly where Defendants also persuasively contend that Plaintiff likely will not be able to demonstrate that these employees are similarly situated to Plaintiff in all relevant respects. With these principles in mind, the court rules as follows as to those depositions that are in dispute between the parties.

*Walter Kolodjzinzki* is a substitute teacher whose records another School employee allegedly was asked by Peterson to falsify. Plaintiff's convoluted explanation of the supposed relevance of this evidence is less than persuasive. Given that Plaintiff has already taken the deposition of Maria Vega, who was allegedly told to falsify Mr. Kolodjzinzki's payroll records, Plaintiff has not adequately shown need to take this deposition.

*Andrew Linkenhoker*. Plaintiff's explanation of his need to take this deposition is that Mr. Linkenhoker is a current Trustee of the School and a former principal. This is not a sufficient showing of need to justify taking Mr. Linkenhoker's deposition.

*John Bobala*. Plaintiff's explanation of his need to take this deposition is limited to "information re school history" (Dkt. No. 51 at 4). This is far from a sufficient showing of need to justify taking Mr. Bobala's deposition.

*Robert Holhut, Mike Furman, Don Baker, Dan Peters, and Theodore Hanks*. Plaintiff's explanation of his need to take the depositions of these individuals is identical: "previously employed, mistreated by Peterson" (*id.* at 5). In view of Plaintiff's very limited showing on the question of whether these employees were similarly situated to Plaintiff, the marginal relevance of this information to Plaintiff's proof of his claims, and Plaintiff's ability to obtain information about the circumstances of these employees from other individuals whose depositions Plaintiff will be entitled to complete under the terms of this order, the court concludes that Plaintiff has not adequately demonstrated that taking these five depositions is proportional to the needs of the case.

*Pete Perrson*. Plaintiff's explanation of his need to take this deposition is that he has reason to believe that Mr. Perrson has knowledge of Peterson's efforts to eliminate department heads. Plaintiff has not alleged in his amended complaint that he was a department head and he acknowledges that eliminating department heads as a means of saving money is not an illegal goal. Given the marginal relevance of this information to the claims asserted by Plaintiff, he has not adequately demonstrated a need to take this deposition or that the deposition is proportional to the needs of the case.

*Kevin Salmon*. Plaintiff explains that Salmon was the management representative for the School who represented the School in connection with Plaintiff's application for unemployment benefits. Plaintiff's amended complaint includes allegations about the adverse position the School took when Plaintiff applied for unemployment benefits (Dkt. No. 17 at 9. The court

12

cannot say at this stage that evidence about the School's actions and representations during Plaintiff's unemployment proceedings are irrelevant to his claims in this forum. Plaintiff has adequately justified a need to take Salmon's deposition.

*Second Rule 30(b)(6) deposition of the School and Trustees*. In the list of additional topics on which Plaintiff proposes to take testimony at a second Rule 30(b)(6) deposition of the School and Trustees, Plaintiff has not adequately supported his need for this information. To the extent he seeks further testimony about payroll data related to Kolodjzinzki, he has had adequate opportunity to explore an issue that appears marginal, at best, to his claims. To the extent he seeks information about the costs of a football program, he can adequately explore this topic, which also appears fairly marginal to his claims, at the deposition of Peterson, and, possibly, at other depositions.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order Precluding Plaintiff from Obtaining Confidential Personnel Information (Dkt. No. 45) and Plaintiff's Motion for Leave for Additional Depositions (Dkt. No. 51) are granted in part and denied in part on the terms set forth in this Memorandum and Order. The court deems as moot Defendants' Motion for a Protective Order Limiting Depositions (Dkt. No. 46). No award of fees or costs to either party is justified. *See* Fed. R. Civ. P. 37(a)(5).

The parties are directed to confer and file **by no later than March 12, 2018** a joint proposal for revisions to the existing scheduling order in this case for the completion of non-expert discovery, expert disclosures, if any, and the filing of dispositive motions. It is so ordered.

Dated: February 26, 2018 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON

U.S. MAGISTRATE JUDGE